UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| ALBERT CHING, | No. C 11-4838 MEJ |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| SIEMENS INDUSTRY, INC., | |
| Defendant. | [Dkt. No. 31] |

## I.  INTRODUCTION

Pending before the Court is Plaintiff Albert Ching's Motion for Preliminary Approval of Class Action Settlement. Dkt. Nos. 31 (Notice), 32 (Motion). Defendant Siemens Industry, Inc. does not oppose Plaintiff's Motion. Mot. at 1. For the following reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval of the Settlement.

## II.  BACKGROUND

### A.    Litigation History

Plaintiff brought this class action on behalf of a class of persons consisting of Service Technicians who were employed to install, inspect, repair, and/or maintain fire systems ("Fire Service Technicians") by Defendant in California at any time from August 19, 2007 through December 31, 2012 ("Class Members").[1] Mot. at 1.

In his First Amended Complaint, Plaintiff asserts claims for: (1) failure to pay prevailing wages and overtime under California Labor Code sections 1770 *et seq.* and 510; (2) failure to pay wages and overtime under Labor Code section 510; (3) meal-period liability under Labor Code section 226.7; (4) rest-break liability under Labor Code section 226.7; (5) violation of Labor Code

---

[1] An employee must have held one of the following job titles and performed the typical duties of a listed job classification to participate: Fire Service Technician Trainee, Fire Service Technician I, Fire Service Technician II, or Fire Senior Service Technician. Mot. at 1.

section 2802(a); (6) violation of Labor Code section 226(a); (7) penalties pursuant to violation of Labor Code section 203; (8) violation of California Business & Professions Code section 17200 *et seq.*; (9) penalties pursuant to violation of Labor Code section 2699. Dkt. No. 10.

The parties attended a mediation session presided over by Michael Dickstein, Esq., a mediator with significant experience in wage and hour class actions. Mot. at 7. While the parties were unable to reach agreement at the mediation, they continued to negotiate following the mediation, and thereafter reached an agreement outlining the key elements of the agreed upon settlement. *Id.* On October 3, 2013, Defendant filed the Joint Stipulation of Class Settlement and Class Settlement Agreement and Release ("Agreement"). Dkt. No. 31.

### III. DISCUSSION

**A.  Settlement Agreement**

Pursuant to the Agreement, Defendant has agreed to pay up to $425,000.00 (the "Maximum Gross Settlement Amount") to settle and release all claims asserted by Plaintiff on behalf of the proposed class, defined as "all current or former Service Technicians employed to install, inspect, repair and/or maintain fire systems by Siemens in the State of California between August 19, 2007 and December 31, 2012." Mot. at 3.

**1.  Settlement Amount**

Under the terms of the Agreement, Defendant agrees to pay up to $425,000 as the Maximum Gross Settlement Amount. The Agreement provides for the following payments: (1) up to $5,000 to Plaintiff for his services and participation as class representative; (2) up to 30% of the Maximum Gross Settlement Amount, which amounts to $127,500, to Class Counsel for attorneys' fees and up to $9,000 for litigation costs; (3) $5,000 to the California Labor and Workforce Development Agency ("LWDA") for penalties pursuant to Labor Code section 2699, *et seq.*; (4) $13,500 for the costs of claims administration; (5) Defendant's share of payroll taxes on the settlement awards; and (6) the employee share of payroll taxes on the settlement awards. *Id.* at 9. The amount remaining in the Maximum Gross Settlement Amount after the above deductions have been made shall be distributed to Class Members who submit timely and valid claim forms ("Participating Class Members"). *Id.*

Defendant shall not pay less than 50% of the Maximum Settlement Distribution Amount to Participating Class Members. *Id.* If less than 50% of the Maximum Settlement Distribution Amount is claimed by Participating Class Members, then the difference between the percentage claimed and 50% shall also be distributed proportionally to Participating Class Members based on the number of workweeks they worked during the relevant time period. *Id*. at 9-10.

The Maximum Settlement Distribution Amount available to pay the claims of Participating Class Members and the employee's share of the payroll taxes due on such payments, is estimated at $249,100.00. Dkt. No. 30 at 5-6.

Defendant will provide data to Gilardi & Co., LLC, the proposed Claims Administrator, from which they will calculate each Participating Class Member's Gross Individual Settlement Payment based on the total number of Compensable Weeks Employed. *Id*. at 15. "Compensable Weeks Employed" means the number of days of continuous service (including any unpaid leave) as a Fire Service Technician during the appropriate Covered Period divided by seven. *Id*. at 3. The Covered period runs from August 19, 2007 to December 31, 2012. *Id*. Specifically, each Claimant's Gross Individual Settlement Payment will be calculated as follows:

1. The total number of Compensable Weeks Employed by all of the Class Members shall constitute the "Total Compensable Weeks."

2. The "Dollars Per Week" will be calculated by dividing the Total Compensable Weeks into the Maximum Settlement Distribution Amount.

3. The portion of the Maximum Settlement Distribution Amount allocated to each Participating Class Member who timely submits a valid Claim Form and who is eligible to receive a payment under this Settlement will be calculated by multiplying the Dollars Per Week by the total Compensable Weeks Employed by that Participating Class Member. The result shall be the Gross Individual Settlement Payment. If less than 50% of the Maximum Settlement Distribution Amount is claimed, the Gross Individual Settlement Payment allocated to each Participating Class Member will be increased in proportion to the share of each other Participating Class Member until 50% of the Maximum Distribution Amount is paid out. The Gross Individual Settlement Payment shall be

allocated between taxable and non-taxable claims as provided in § 4.f.  The Gross Individual Settlement Payment shall be subject to all applicable deductions or withholding required by law or expressly authorized by the Participating Class Member.  *Id*. at 14.

### 2. Class Notice and Claims Procedure

Within 15 calendar days after the Court enters its Preliminary Approval Order, Defendant will provide to the Claims Administrator a database that lists for each Class Member, the individual's name, Social Security Number, last known address and telephone number; and dates of employment as a Fire Service Technician.  *Id.* at 16.  This database will be drawn from Defendant's payroll and other business records.  *Id.* at 9-10.  Defendant will also provide Class Counsel with a list of each Class Member's name; and the dates of employment as a Fire Service Technician.  *Id.* at 11-12.  The data provided to the Claims Administrator and Class Counsel will remain confidential and will not be disclosed to anyone, except as required to applicable tax authorities, pursuant to Defendant's express written consent or by order of the Court.  *Id.* at 12-15.

Within 20 calendar days after Defendant provides the Claims Administrator with the database specified: (1) the Claims Administrator will calculate the preliminary Gross Individual Settlement Payment for each individual on the list, based on the assumption that: (a) the Court finally approves the Settlement in accordance with this Agreement; and (b) 50% or more of the Maximum Settlement Distribution Amount is claimed by Participating Class Members, and will mail, by first-class mail, the Class Notice, Claim Form and Exclusion Form to all Class Members at their last known address, unless modified by any updated address information that the Claims Administrator obtains in the course of administration of the Settlement.  *Id.* at 16-24.

In order for a Class Member to be eligible to participate in this Settlement and to receive any settlement payments, the Class Member must submit a valid, fully-executed Claim Form (along with all required documentation) to the Claims Administrator that is postmarked for delivery to the Claims Administrator, no later than 60 calendar days after the initial date of mailing of the Class Notices and Claim Forms.  No Claim Forms will be accepted if postmarked for delivery to the Claims Administrator after the deadline indicated, absent good cause shown.  All original Claim Forms shall be sent directly to

the Claims Administrator at the address indicated on the Claim Form.  The Class Members will have 45 calendar days after the date on which the Claims Administrator mails the Notice Materials to object to the Settlement by serving on the Claims Administrator, by the 45 day deadline, a written objection to the Settlement.

### 3. Settlement Administration Costs

Plaintiff has proposed that Gilardi & Co., LLC be appointed as the Claims Administrator in this action. Dkt. No. 34 at 4.  The parties estimate the settlement administration cost will be $13,500, which will be paid from the Gross Settlement Amount. Dkt. No. 30 at 5.  If the Class Administrator's fees and costs exceed $15,000, any shortfall will reduce the amount of wages and penalties payable to Participating Class Members. *Id.* at 12.  Any amount by which the costs are less than Thirteen Thousand Five Hundred Dollars ($13,500), will be added to the Maximum Settlement Distribution Amount for distribution to Participating Class Members. *Id.*

### 4. Class Representative Incentive Awards

In addition to the relief awarded to all participating class members, the Agreement authorizes Plaintiff, as class representative, to seek and incentive award of up to $5,000, to be paid from the Gross Settlement Amount. *Id.* at 13.

### 5. Attorneys' Fees and Costs

The Agreement authorizes Class Counsel to apply to the court for an award of attorneys' fees in an amount up to, but not to exceed, 30 percent of the Maximum Gross Settlement Amount, equaling $127,500, and costs not to exceed $9,000, which Defendant does not oppose. *Id.* at 11.

### 6. Released Claims

The Agreement states that all Class Members who do not timely and validly exclude themselves from the Class and who do not timely and validly file a Claim Form will be deemed to have forever released and discharged the Released Claims with the exception of their claims under the Fair Labor Standards Act.  Dkt. No. 30, Exhibit D at 4.

### B.      Conditional Class Certification

Plaintiffs seek conditional certification of a settlement class under Federal Rules of Civil Procedure 23(a) and 23(b)(3). A court may only certify a class action if it satisfies the four prerequisites identified in Rule 23(a), *and* fits within one of the three subdivisions of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003). "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. Conoco Phillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where there are common questions of law or fact which predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3). In the settlement context, the court must pay "undiluted, even heightened, attention" to class certification requirements because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton*, 327 F.3d at 952–53 (quoting *Amchem*, 521 U.S. at 620); *Hanlon* v. *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (same).

Here, the requirements under 23(a) are satisfied. First, there are approximately 115 class members identifiable from Defendant's records. Mot. at 1. This number is sufficient to satisfy Rule 23's numerosity and ascertainablilty requirements because the putative class members can be identified, and it would be impracticable for the Court to allow all potential plaintiffs to pursue their claims separately. *See Hanlon*, 150 F.3d at 1019 ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.' " (quoting Rule 23(a) (1)); *see also O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) ("A class definition should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that

every potential member can be identified at the commencement of the action." (internal quotations omitted)).

Second, with respect to commonality, Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012). Here, the issues facing the class arise from common questions involving Defendant's calculation and payment of wages and overtime. This is sufficient to satisfy the commonality requirement. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. 2010) (finding commonality requirement satisfied where Plaintiffs identified "common factual questions, such as whether Defendants' policies deprived the putative class members of meal periods, rest periods, overtime pay, and reimbursement ..., and common legal questions, such as Defendants' obligations under [sections of the] California Labor Code").

Third, Plaintiffs have satisfied the typicality requirement under 23(a)(3). Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of the requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quotation marks omitted). Here, the named Plaintiff's personal claims are similar to those of the absent class members, and each class member's claims arise from the same course of events, and each class member would be making similar legal arguments as Plaintiff to prove Defendant's liability.

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment

which binds them." *Hanlon*, 150 F.3d at 1020. To determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957 (citation omitted); *see also Fendler v. Westgate–California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and counsel also must have sufficient "zeal and competence" to protect class interests). Here, there is no indication that there is any conflict between the class and Plaintiff or his counsel. In addition, the court is satisfied that Plaintiff and his counsel have and will continue to pursue this action vigorously on behalf of Plaintiff and the proposed class members.

In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate for certification under one of the categories in Rule 23(b). Fed. R. Civ. P. 23(b); *Hanlon*, 150 F.3d at 1022. The Court finds that certification is appropriate under Rule 23(b)(3), which states that a class action can be maintained if, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When making a 23(b)(3) determination, courts consider several factors. First, the courts will look at whether or not the class members have interests in individually controlling the prosecution or defense of separate actions; second, the courts consider the extent and nature of any litigation concerning the controversy already begun by or against class members; third, the courts assess the desirability or undesirability of concentrating the litigation of the claims in the particular forum; finally, the courts consider the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Here, the first and third factors are satisfied because the case involves multiple claims for relatively small sums and it would not be economically viable for class members to seek compensation individually. *See Amchem*, 521 U.S. at 625; *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001) (class action appropriate because "if plaintiffs cannot proceed as a class, some perhaps most will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."). Additionally,

1 the second factor is satisfied given the extensive litigation, discovery and mediation that has taken
2 place and the Agreement reached between the parties.  The final consideration is whether there will be
3 likely difficulties in managing the proposed class action.  *See* Fed. R. Civ. P. 23(b)(3).  Here, there are
4 no obvious difficulties in managing the class action, given that the parties have submitted a proposed
5 Agreement and are ready to proceed to final approval.

6      Because the Court finds that Rule 23(a) and 23(b)(3)'s requirements are satisfied, conditional
7 certification of the class is appropriate.

**C. Preliminary Fairness Determination**

9      A proposed settlement under Federal Rules of Civil Procedure 23(e) must be " 'fundamentally
10 fair, adequate, and reasonable'"  *Staton,* 327 F.3d at 952.  Pursuant to Federal Rule of Civil Procedure
11 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or
12 compromised only with the court's approval."  The Ninth Circuit stated that, "[t]he purpose of Rule
13 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their
14 rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  The initial determination to
15 approve or reject a proposed settlement is "committed to the sound discretion of the trial judge"
16 *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

17      To determine the preliminary fairness of an agreement, the Court balances "the strength of
18 plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of
19 maintaining class action status throughout the trial; the amount offered in settlement; the extent of
20 discovery completed, and the stage of the proceedings; the experience and views of counsel."  *Staton,*
21 327 F.3d at 959 (citing *Molski,* 318 F.3d at 953 (citation omitted)).  The Court does not make
22 determinations on the merits of contested issues in the dispute.  *Officers for Justice*, 688 F.2d at 625.
23 Preliminary approval of is appropriate if  "the proposed settlement appears to be the product of
24 serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant
25 preferential treatment to class representatives or segments of the class, and falls within the range of
26 possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)
27 (citing Manual for Complex Litigation, Second § 30.44 (1985)).

Here, the Agreement complies with the factors from *In re Tableware Antitrust Litigaion*. The parties took part in settlement discussions, which included a full day of mediation overseen by Michael E. Dickstein, a mediator experienced in wage-and-hour class action law suits. While the parties did not come to agreement at the mediation, they continued settlement talks with the assistance of Michael Dickstein and eventually agreed to the terms of the Agreement. The private mediation "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at*6 (N.D. Cal. Nov. 21, 2012). Additionally, there are no obvious deficiencies with the proposed settlement. Participating Class Members will receive monetary reimbursement based on the number of weeks worked in the relevant time period. There is no indication that the settlement improperly grants preferential treatment to class representatives or segments of the class. The parties arrived at the settlement after more than two years of litigation and after substantial discovery was completed, and the parties clearly contemplated the risk, expense, and delay posed by continued litigation. The Plaintiff's request for an incentive payment of up to $5,000 is presumptively reasonable. *See, e.g., Jacobs v. Cal. State Auto. Ass'n Inter–Ins. Bureau*, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (rejecting a request for a $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable."). The Court finds that the settlement appears to fall within the range of possible approval.

As stated above, the Agreement complies with the factors from *In re Tableware Antitrust Litigaion*. The Agreement was the product of non-collusive negotiations between the parties; there is no preferential treatment between Plaintiff and class members, and the Agreement is within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Because the Court finds that the Agreement meets the standards of *In re Tableware Antitrust Litigaion*, conditional class certification is appropriate.

**D.    Class Notice**

The Court next considers the sufficiency of the parties' notice plan. Where a proposed settlement has been reached by the parties, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The Court must

ensure that the parties' notice plan provides for "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and that the notice itself explains in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and the binding nature of the class judgment.  Fed. R. Civ. P. 23(c)(2)(B).

Here, the parties propose mailing the Class Notice and claim form to class members by first-class mail within fifteen days after the Court enters its Preliminary Approval Order.  Defendant will provide to the Claims Administrator a database that lists, for each Class Member, the individual's name, Social Security Number, last known address and telephone number; and dates of employment as a Fire Service Technician.  The Court finds that the Class Notice adequately describes the nature of the action, summarizes the terms of the settlement, identifies the class and provides instruction on how to opt out and object, and sets forth the proposed fees and expenses to be paid to Plaintiff's counsel and the settlement administrator in clear, understandable language.

**E.     The Proposed Agreement Meets the Requirements for Preliminary Certification**

In sum, the Court finds that the joint request for preliminary approval of the class action settlement and conditional certification of the settlement class is appropriate.

First, the requirements of Rule 23(a) are satisfied.  The numerosity requirement is satisfied because there are approximately 115 identified class members, making it impracticable for the Court to handle all 115 claims individually.  The putative class members share common questions regarding the payment of wages and overtime.  The typicality requirement of Rule 23(a)(3) is met because the claims of Plaintiff are typical of the class in that both Plaintiff and class members claims involve payment of wage calculations and overtime.  Plaintiff has demonstrated that he and his counsel will adequately represent the putative class's interests.

Second, the Court finds that the Agreement meets the preliminary fairness determination under Rule 23(e).  Tthe parties participated in meditations and negotiations with no preferential treatment for Plaintiff or class representatives.

11

Third, the Agreement meets the notification standards which require that direct notice be sent to all individual class members that would be bound by the Agreement, and that the notice explains the definition of the class, claims, issues, and the procedure to request exclusion from being bound by class settlement. *See* Rule 23(e)(1) & (c)(2)(b).  Here, the Agreement requires Defendant to provide the Claims Administrator a database listing each class members last known address and telephone number; Social Security Number, and dates of employment as a Fire Service Technician.  Additionally the Agreement meets the requirement that the notice  explains the definition of the class, claims, issues, and the procedure to request exclusion from being bound by class settlement.

Because the Agreement meets all of the above mentioned requirements, the Court finds that preliminary approval of the settlement is appropriate.

## IV.  Conclusion

For the reasons stated above, Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 31) is **GRANTED** as follows:

(1) The Court conditionally approves, for the purposes of approving this Settlement only and for no other purpose and with no other effect on the Action, including no effect on the Action should the Agreement not ultimately be approved or should the Final Effective Date not occur, an opt-out class under Rule 23, Federal Rules of Civil Procedure, that is defined as follows:

> All current or former Service Technicians employed to install, inspect, repair and/or maintain fire systems ("Fire Service Technicians") by Defendant Siemens Industry, Inc. ("Siemens") in the State of California between August 19, 2007 and December 31, 2012, and who have not, as of the date of the preliminary approval of the settlement, executed a general release of known and unknown employment claims against Siemens, unless such release specifically permits participation in this Settlement by reference to this lawsuit.

(2) The Court hereby appoints Plaintiff Albert Ching as Class Representative for the Class.

(3) The Court appoints Anthony J. Orshansky and David H. Yeremian of Orshansky & Yeremian LLP as Class Counsel.

(4) The Court hereby appoints Gilardi & Co., LLC as the Claims Administrator.

(5) The parties will provide Notice of (1) Proposed Class Action Settlement and, (2) Final

Settlement Approval Hearing ("Class Notice"), Exclusion Form, and Claim Form, attached as Exhibits A-C to the Stipulation of Settlement, are hereby approved. The Claims Administrator shall mail Exhibits A-C to the Class Members pursuant to the applicable provisions in the Agreement. Defendant shall provide the Claims Administrator with the information necessary to conduct this mailing as set forth in the Agreement.

(6) The Court hereby establishes the following deadlines:

| Date | Deadline |
|---|---|
| **Dec. 13, 2013** | Deadline for Claims Administrator to mail Class Notice, Claim Form and Exclusion Form. |
| **Jan. 27, 2014** | Deadline for Class Members to postmark or deliver objections to the Settlement to the Claims Administrator. |
| **Feb. 11, 2014** | Deadline for Class Members to postmark or deliver Claim Forms to the Class Administrator and Deadline for Class Members to postmark or deliver Exclusion Forms to the Claims Administrator. |
| **Feb. 20, 2014** | Deadline for Class Counsel to file and serve motion for final approval of Settlement and motion for attorney's fees, costs, and Class Representative payment. |
| **March 27, 2014** | Final Approval Hearing. |

(7) Individual Class Members may be heard at the Final Approval Hearing, either personally or through their counsel, only if they serve on the Claims Administrator, on or before 45 days from the date of the mailing of the Class Notice, a written objection to the Settlement and/or a written notice of their intention to appear at the Final Approval Hearing, provided they have not filed a Request for Exclusion.

(8) The Parties shall respond to any written objection to the Settlement in their motion for final approval, which motion shall be filed and served thirty-five days prior to the date of the Final Approval Hearing which is set for **March 27, 2014 at 10:00 a.m.** in Courtroom B of this Court.  In addition, at the Final Approval Hearing, Class Counsel shall be prepared to address any objections to the Settlement and to provide other information as appropriate bearing on whether or not the Settlement should be finally approved.

(9) In the event that the Final Effective Date occurs, all Class Members who do not timely and validly exclude themselves from the Class and who do not timely and validly file a Claim Form will be deemed to have forever released and discharged the Released Claims with the exception of their claims under the Fair Labor Standards Act.  In the event that the Final Effective Date does not occur for any reason whatsoever, the Agreement shall be deemed null and void and shall have no effect whatsoever.

(10) The Court grants Plaintiff leave to file a Second Amended Complaint to add a claim under the Fair Labor Standards Act, 29 U.S.C. section 216.  The allegations in the Second Amended Complaint are deemed controverted by the Answer previously filed by Siemens in response to the Complaint, and no further responsive pleading is required.

(11) Class Counsel and Plaintiff shall file a motion for attorneys' fees, costs, and enhancement awards on or before the date the settlement administrator mails the Class Notice and claim forms to class members.  Plaintiff shall file a motion for final approval of the settlement by no later than 35 days before the final approval hearing.

The Agreement is preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

**IT IS SO ORDERED.**

Dated: November 26, 2013

_____
Maria-Elena James
United States Magistrate Judge

14