UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALBERT CHING,

          Plaintiff,

    v.

SIEMENS INDUSTRY, INC.,

          Defendant.

Case No.  11-cv-04838-MEJ

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, DISMISSAL WITH PREJUDICE, AND FINAL JUDGMENT**

Re: Dkt. Nos. 37, 38

## INTRODUCTION

Pending before the Court is the joint motion of Plaintiff Albert Ching ("Plaintiff") and Defendant Siemens Industry, Inc. ("Defendant") for final approval of the class action settlement (Dkt. No. 38 ("Aprv. Mot.")), and Plaintiff's motion for an award of attorneys' fees, costs, and class representative incentive.  (Dkt. No. 37 ("Pl.'s Fee Mot.")).  For the following reasons, the Court GRANTS both motions.

## BACKGROUND

This wage and hour class action was filed on September 30, 2011.  The class consists of persons who were employed as Fire Service Technicians by Defendant in California at any time from August 19, 2007 through December 31, 2012 ("Class Members").  Yeremian Decl. to Aprv. Mot., Ex. A, Jt. Class Stlmt. Stip., ¶ 2(d).  Plaintiff asserts claims for: (1) failure to pay prevailing wages and overtime under California Labor Code sections 510 and 1770 et seq.; (2) failure to pay wages and overtime under Labor Code section 510; (3) meal-period liability under Labor Code section 226.7; (4) rest-break liability under Labor Code section 226.7; (5) violation of Labor Code section 2802(a); (6) violation of Labor Code section 226(a); (7) penalties pursuant to violation of Labor Code section 203; (8) violation of California Business & Professions Code section 17200 et seq.; (9) penalties pursuant to violation of Labor Code section 2699.  First Am. Class Action Compl., Dkt. No. 10.

On August 27, 2012, the parties attended a full-day mediation session with Michael

United States District Court
Northern District of California

Dickstein, Esq., a mediator with significant experience in wage and hour class actions.  Aprv. Mot. at 13; Yeremian Decl., Ex A, Jt. Class Stlmt. Stip., ¶ 13.  While the parties were unable to settle the matter at the mediation, they continued to negotiate and reached an agreement on May 22, 2013.  Aprv. Mot. at 4; Status Rpt. at 2, Dkt. No. 29.

On October 3, 2013, Defendant filed the Joint Stipulation of Class Settlement and Class Settlement Agreement and Release ("Agreement").  Prelim. Aprv. Mot., Dkt. No. 31.  As part of the settlement, Plaintiff filed a Second Amended Complaint adding a claim for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. on December 9, 2013.  Dkt. No. 36.

On November 27, 2013, the Court granted preliminary approval of the settlement, authorized the notice process, and scheduled a hearing to consider final approval of the settlement. Prelim. Aprv. Order, Dkt. No. 35.  On February 27, 2014, the parties filed a Joint Motion for Final Approval of Class Action Settlement.   Dkt. No. 38.  On the same date, Plaintiffs also filed a Motion for Attorneys' Fees and Costs and for an Enhancement Award.  Dkt. No. 37.  No opposition was filed.

**A.      Terms of the Settlement Agreement**

Pursuant to the Agreement, Defendant has agreed to pay up to $425,000.00 (the "Maximum Gross Settlement Amount") to settle and release all claims asserted by Plaintiff on behalf of the proposed class.  Yeremian Decl., Ex. A, ¶ 3, 14.  Per the Agreement, the class is defined as "all current or former Service Technicians employed to install, inspect, repair and/or maintain fire systems by Siemens in the State of California between August 19, 2007 and December 31, 2012."  *Id.* at 3.

The Agreement provides for the following payments: (1) up to $5,000 to Plaintiff for his services and participation as class representative; (2) up to 30% of the Maximum Gross Settlement Amount, which amounts to $127,500, to Class Counsel for attorneys' fees and up to $9,000 for litigation costs; (3) $5,000 to the California Labor and Workforce Development Agency ("LWDA") for penalties pursuant to Labor Code section 2699, et seq.; (4) the costs of claims administration (estimated at $15,000); (5) Defendant's share of payroll taxes on the settlement awards; and (6) the employee share of payroll taxes on the settlement awards (estimated at

1    $18,037.11). *Id.* at ¶ 14.  The amount remaining in the Maximum Gross Settlement Amount after

2    the above deductions have been made shall be distributed to Class Members who submit timely

3    and valid claim forms ("Participating Class Members"). *Id.*  Defendant shall not pay less than

4    50% of this amount to Participating Class Members. *Id.*  The Agreement provides that if less than

5    50% is claimed by Participating Class Members, then the difference between the percentage

6    claimed and 50% shall also be distributed proportionally to Participating Class Members based on

7    the number of workweeks they worked during the relevant time period. *Id.*  The Maximum

8    Settlement Distribution Amount available to pay the claims of Participating Class Members and

9    the employee's share of the payroll taxes due on such payments, is estimated at $249,100.00.  Dkt.

10   No. 30 at 5-6.

11       In addition to the foregoing relief, the settlement also provides that (1) the Class

12   Representative may seek an incentive payment of up to $5,000; and (2) class counsel may apply to

13   the Court for an award of attorneys' fees and costs up to $127,500 without objection from

14   Defendant. *Id.* ¶¶ 20, 28.

15       Defendant additionally agrees to make the payments described above in exchange for the

16   class members releasing all claims up to the date of the preliminary approval order arising out of

17   the subject matter giving rise to the claims in this action. *Id.* Ex. D, at 4.  The release applies to

18   each class member who does not timely submit a request for exclusion.

19   **B.    Notice to the Class**

20       On November 27, 2013, the Court granted Plaintiff's motion for preliminary approval of

21   the settlement.  Dkt. No. 35.  Pursuant to the Preliminary Approval Order, the Class

22   Administrator, Gilardi & Co., LLC, sent the Notice of Proposed Class Action Settlement and Final

23   Settlement Approval Hearing, the Claim Form, and the Exclusion Form (collectively "Notice

24   Packet") by U.S. Mail to the address of record provided for each of the 114 class members.

25   Osterlund Decl., ¶¶ 2-3.  Since the mailing, four Notice Packets were returned with undeliverable

26   addresses. *Id.* ¶ 4.  The Class Administrator used a third party locator service to perform address

27   searches for the returned Notice Packets, and was able to find updated addresses for all of them.

28   *Id.*  Following the re-mailing of these Notice Packets, one Notice Packet was returned as

United States District Court
Northern District of California

1    undeliverable.  *Id.*

2        The Class Administrator also implemented the parties' notice plan, which included

3    establishing a toll-free telephone number for class members to call to request a Notice Packet.  *Id.*

4    ¶ 5.  The line was staffed with live English and Spanish speaking operators who were available

5    Monday through Friday between the hours of 7:00 a.m. and 5:00 p.m. Pacific Time.  *Id.*  On

6    January 6, 2014, the Class Administrator also sent a reminder postcard to the 100 names on the

7    class list who had not yet submitted a claim form or an exclusion form.  *Id.* ¶ 6.

8        As of February 28, 2014, the Claims Administrator had received 68 claims out of 114 class

9    members and five opt-out requests.  *Id.* ¶¶ 7, 9.  The claims period closed on February 11, 2014.

10   *Id.*  There were no objections to the settlement.  *Id.* ¶ 10.

11   **C.**     **Class Certification**

12       For the reasons set forth in the Court's Preliminary Approval Order, the Court finds that

13   the proposed settlement class meets the requirements of Federal Rules of Civil Procedure 23(a)

14   and 23(b)(3).  Prelim. Approval Order, at 6-9, Dkt. No. 35.  The settlement class consists of:

15           All current or former Service Technicians employed to install,
16           inspect, repair and/or maintain fire systems ("Fire Service
             Technicians") by Defendant Siemens Industry, Inc. ("Siemens") in
17           the State of California between August 19, 2007 and December 31,
             2012, and who have not, as of the date of the preliminary approval
18           of the settlement, executed a general release of known and unknown
             employment claims against Siemens, unless such release specifically
19           permits participation in this Settlement by reference to this lawsuit.

20   *Id.*, at 12.  Thus, the Court now proceeds to analyze whether the proposed settlement is fair,

21   adequate, and reasonable, as required by Federal Rule of Civil Procedure 23(e)(2).

22                                    **DISCUSSION**

23   **A.**     **Final Approval of Class Action Settlement**

24           1.      <u>Legal Standard</u>

25       Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil

26   Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and

27   adequate.  Fed. R. Civ. P. 23(e)(2).  To determine whether a settlement agreement meets these

28   standards, a district court must consider a number of factors, including: "(1) the strength of the

United States District Court
Northern District of California

4

plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004)) (hereinafter, "the *Churchill* factors").

Not all of these factors will apply to every class action settlement, and in certain circumstances, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomm. Coop*. *v. DIRECTTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir.1993)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton v. Boeing Co*., 327 F.3d 938, 960 (2003) (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998) (quotation marks omitted)).

In addition to the above factors, where "a settlement agreement is negotiated prior to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 946-47 (internal citation and quotations omitted). Such signs of collision include: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) when the parties negotiate an arrangement under which Defendants agree not to oppose an attorneys' fee award up to a certain amount, which is independent from the class's actual recovery, as such an arrangement carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class;" (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* at 947.

2.    The Strength of Plaintiff's Case

In determining the settlement's fairness, the Court must balance against the risks of continued litigation, including the strengths and weaknesses of Plaintiff's case, the benefits

5

afforded to class members, and the immediacy and certainty of a recovery.  *LaGarde v. Support.com, Inc*., 2013 WL 1283325, at *4 (N.D. Cal. March 26, 2013) (citing *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 458 (9th Cir. 2000); *Shames v. Hertz Corp*., 2012 WL 5392159, at *5 (S.D. Cal. Nov.5, 2012)).

Here, the settlement avoids the risks that Plaintiff would not succeed in demonstrating that Defendant failed to comply with state and federal wage and hour laws.  While Plaintiff asserts that he believes that his claims are strong, he acknowledges that he would face significant risks should the case proceed through litigation.  Aprv. Mot. at 7.  Defendant challenged all of Plaintiff's claims.  *Id.*  In particular, this case presented several contested legal and factual issues.  *Id*. at 6.  For example, Defendant presented a credible argument that a recently decided California Supreme Court case established that Defendant's meal and rest periods complied with California law.  Yeremian Decl. ¶ 22 (citing *Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1034-37 (2012) (absent circumstances permitting an "on duty" meal period, an employer must relieve an employee of all duty for the designated meal period, but the employer need not ensure that the employee does no work).  Prior to the decision in *Brinker,* the law relating to whether employers must ensure employees take meal periods and rest breaks or merely offer them was unsettled.  Aprv. Mot. at 7.  Defendant also argued that it did not fail to pay wages as required by California Labor Code section 1770 et seq., and that Plaintiff's Labor Code section 203 causes of action (payment of wages upon termination or discharge) were also uncertain because Plaintiff would not be able to establish that Defendant's failure to pay such wages was "willful" in light of *Brinker*.  Yeremian Decl. ¶¶ 21, 24.

In addition to contesting the validity of Plaintiff's claims, class certification also posed an obstacle, as Defendant maintained that Plaintiff would have difficulty showing predominance of common issues of law and fact with regard to the asserted claims.  *Id.* ¶ 23.  Defendant also argued that Plaintiff would not be able to establish that there was a systemic denial of prevailing wages or overtime compensation.  *Id.*

Plaintiff took all of these factors into consideration of whether recovery was likely when the parties negotiated the settlement.  Aprv. Mot. at 8.  Plaintiff also considered the costs and risks

associated with class certification and trial.  The high risk, expense, and nature of a lengthy class action trial supported settlement at this stage of the litigation.  *Id*.  The Court agrees that when weighed against the considerable risks of litigation, conferring an immediate benefit to the class members is preferable.

### 3.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The risk, expense, complexity, and likely duration of further litigation are factors that consider "the probable costs, in both time and money, of continued litigation."  *In re Warfarin Sodium Antitrust Litig*., 212 F.R.D. 231, 254 (D. Del. 2002).  Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (citation omitted).

Here, the parties have established that there were significant risks in entering a protracted litigation, including the ultimate reduction in the amount of funds available for settlement.  Aprv. Mot. at 9-10.  Moreover, settlement is favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as the Court.  *Garner v. State Farm Mut. Auto. Ins. Co*., 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) (citing *In re Enron Corp. Sec., Derivative & "ERISA" Litig*., 228 F.R.D. 541, 565 (S.D. Tex. 2005); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y.1995)).  Accordingly, the Court finds that the high risk, expense, and complex nature of a lengthy class action trial weigh in favor of approving the settlement.  *Rodriguez*, 563 F.3d at 964.

### 4.    The Risk of Maintaining Class Action Status Throughout Trial

This factor, which concerns the risk of maintaining class certification, also favors settlement.  Although Plaintiff is confident that based on case law and current trends, certification is proper for this class, as discussed above, Plaintiff has identified several meritorious arguments that Defendants could raise to class certification in the event this lawsuit was to proceed.  Given the risk in obtaining and maintaining class certification, the Court finds that this factor weighs in favor of approving the settlement.

5.      The Amount Offered in Settlement

The amount offered in settlement is another factor for the Court to consider in determining whether to finally approve a proposed settlement. *Churchill Village*, 361 F.3d at 574. Here, the parties negotiated a $425,000 settlement for a potential class of 114 members, with a minimum payout of 50% of the net settlement amount. The average recovery for Class Members is $2,672.56. Osterlund Decl., ¶ 8. 74.04% of the available settlement has been claimed by class members. *Id.* Class Counsel's attorneys' fees and costs will be paid out from the settlement fund, as will the Class Representative's enhancement and the expenses associated with settlement and claims administration. *Id.* The penalties due to the LWDA pursuant to California Labor Code section 2699 et seq. will also be paid out of the settlement fund, as will the employer's share of any payroll taxes. *Id.* Any excess unclaimed portion of the settlement will revert to Defendant. Yeremian Decl. ¶ 14.

The parties aver that the settlement amount was a compromise figure, factoring in the inherent risks related to certification, liability and damages. *Id.* at ¶ 15. The settlement is also structured in a way that ensures that each class member's individual share of the settlement amount will be tailored to the length of his or her employment relative to the other class members or to the number physical paychecks he or she received during the class period; accordingly, the distribution is weighted in favor of those class members who were most affected by the alleged violations. *Id.* Given the risks and uncertainties involved, the settlement amount is not insignificant, and provides an average claim award of $2,672.56 to each of the 68 class members. Osterlund Decl. ¶ 8. Based on the size of the claims, it is unlikely that the individual class members would have prevailed without the class-action mechanism. Yeremian Decl. ¶ 15. Accordingly, because the settlement has resulted in discernible benefits to class members, this factor weighs in favor of approving the Settlement.

6.      Extent of Discovery Completed

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, the parties represent that the Settlement Agreement is the product of a

complete and thorough factual investigation into the alleged violations over a two-year period. Yeremian Decl. ¶¶ 9-11. Class Counsel conducted interviews, propounded extensive written discovery, discussed the case with opposing counsel, analyzed thousands of pages of documents, deposed Defendants' person most knowledgeable, analyzed damages, reviewed time and pay records and policy documents, and collected evidence. *Id.* From this investigation, class counsel were able to adequately assess liability and damages. *Id.* Accordingly, the Court finds that the parties had sufficient information to make an informed decision about settlement. This factor thus weighs in favor of approval.

### 7.    The Experience and Views of Counsel

"With regard to class action settlements, the opinions of counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases." *West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, at *17-18 (E.D. C.A. 2006). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). A district court is "entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Here, the experience and views of counsel also weigh in favor of approving the Settlement. Class Counsel's primary area of practice is wage-and-hour class actions. Yeremian Decl. ¶ 2. Defendant is likewise represented by experienced litigators. *Id.* at ¶ 7. Both parties concur that the settlement is fair, and class counsel believes approval is in the best interests of the putative settlement class.

### 8.    The Reaction of the Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529. Thus, the Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *15 (N.D. Cal. Sept. 22, 2009); *see also DIRECTV, Inc.,* 221 F.R.D. at 529. Here, a total of 68 Class Members have submitted claim

United States District Court
Northern District of California

9

forms, 5 have opted out, and none have objected.  Osterlund Decl. ¶¶ 7, 9, 10.  Class members

have claimed 17,959.78 work weeks, which is equivalent to 74.04% of the total available work

weeks.  *Id.*  The participation rate represents a solid approval of the settlement.  *Id.*  The fact that

some members opted out also indicates that the Class Members read the Notice and understood the

settlement, such that they were able to make an informed decision whether to participate.  Thus,

the Court finds that the positive response of the class weighs in favor of finding that the settlement

is favorable to the class members.

        9.      Absence of Collusion

      Given that this settlement was reached prior to certification of the class, the Court must

also examine the settlement for evidence of collusion with a higher level of scrutiny.  *Bluetooth*,

654 F.3d at 946.  In conducting such an examination, courts must be "particularly vigilant not only

for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of

their own self-interests and that of certain class members to infect the negotiations."  *Id.*  Signs of

collusion include: (1) a disproportionate distribution of the settlement to counsel; (2) negotiation

of a "clear sailing provision" where under which defendants agree not to oppose an attorneys' fee

award up to a certain amount; and (3) when the parties arrange for fees not awarded to revert to

defendants rather than be added to the class fund."  *Id.* at 947.

      Here, several of the *Bluetooth* signs are present.  Accordingly, consistent with *Bluetooth*,

the Court compares the payout to the class to the unopposed claim of fees by class counsel.  The

class payout far exceeds Class Counsel's reasonable 30% fee award, and thus the first factor

weighs against a finding of collusion.

      The Court also must examine whether a disproportionate part of the settlement is being

awarded to Class Counsel under the "clear sailing" provision of the Agreement.  While

Agreements with such provisions can, in some instances, raise a warning sign that "class counsel

have allowed pursuit of their own self-interests and . . . to infect the negotiations," none are

present here.  *Bluetooth*, 654 F.3d at 947.  Clear sailing provisions generally do not raise the same

concerns where, as here, the fees are to come from the settlement fund.  *Rodriguez*, 563 F.3d at

961 n. 5 (collusion generally inferred from "clear sailing" provision where attorneys' fees are paid

United States District Court
Northern District of California

on top of the settlement fund). Moreover, the Court has found that the requested fees are reasonable, such that there will be no reversion. Thus the second factor weighs against a finding of collusion.

As to the third factor, the Agreement contains a provision that the unclaimed fees would revert to Defendant, which would reduce the recovery available to the class. However, the Court finds that even with the reversion of unpaid fees to Defendant, the Agreement is fair and reasonable. All of the *Churchill* factors support the Court's finding that the settlement should be approved. Moreover, the only *Bluetooth* factor that is arguably present will not affect the class because, as discussed below, the Court awards the full 30% attorneys' fees to Plaintiff. Finally, the Court finds the Settlement is the product of arms-length mediation between experienced and professional counsel.

**B.      Final Approval of Class Action Settlement**

Having considered the relevant factors, the Court concludes that the circumstances surrounding the settlement weigh in favor of a finding that it is fair and adequate. The settlement represents a substantial recovery that avoids the risks associated with protracted litigation in a highly contested wage-and-hour case. Additionally, all of the prerequisites to certification have remained satisfied since the Court provisionally certified the settlement class on November 27, 2013. The Court accordingly certifies the settlement class and approves the settlement.

**C.      Attorneys' Fee Award**

Along with the Motion for Final Approval of the Settlement in this matter, Class Counsel seek an award of $127,500 in attorneys' fees, or 30% of the $425,000 common Settlement fund created pursuant to the parties' Settlement Agreement. Class Counsel also seeks $9,000 in expenses, and a $5,000 incentive award for the Class Representative.

1.      <u>Legal Standard</u>

Rule 23(h) of the Federal Rules of Civil Procedure provides, "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Attorney's fees provisions included in proposed class action agreements must be "fundamentally fair, adequate and reasonable." *Staton*, 327 F.3d at 964. In

"common fund cases," a court has discretion to award attorneys' fees either as a percentage of such common fund or by using the lodestar method. *Id*. at 967-68. "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029 (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The Ninth Circuit has established 25% of the common fund as a benchmark award for attorney fees. *Id.* (citing *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990). This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers,* 904 F.2d at 1311. The court's selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case, including: (1) the result achieved; (2) the risk involved in the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048-50 (9th Cir. 2002). Additionally, even when applying the percentage method, the court should use the lodestar method as a cross-check to determine the fairness of the fee award. *Covillo v. Specialtys Café,* 2014 WL 954516, at *6 (N.D. Cal. March 6, 2014) (citing *Vizcaino*, 290 F.3d at 1050). "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting .... [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* (citing *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 306-07 (3d Cir. 2005) (footnote and citation omitted)).

    2.   <u>Analysis</u>

Plaintiffs request a fee award of $127,500, payable out of the gross settlement amount. The requested fee award amounts to 30% of the common fund, which exceeds the 25% benchmark the Ninth Circuit considers presumptively reasonable. *Bluetooth*, 654 F.3d at 942.

As to the first factor, the overall result and benefit to the class from the litigation is the most critical factor in granting a fee award. *In re Omnivision Technologies, Inc*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *In re Heritage Bond Litig*., 2005 WL 1594403, at *8 (C.D.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Cal. June 10, 2005).  Here, the results achieved in this case were very favorable considering the

2   significant challenges Plaintiff would have faced in maintaining this litigation.  The average award

3   is approximately is $2,672.56.  Osterlund Decl., ¶ 8.

4        As to the second factor, as detailed above, the risks of litigation were real and substantial.

5   Pl.'s Fee Mot., Yeremian Decl. ¶ 35.  With respect to the third factor, the complexity and potential

6   duration of the case, coupled with the lengthy settlement negotiations, also weighs in favor of

7   departing from the 25% benchmark.  As to the fourth factor, Class Counsel took this case on a

8   contingent fee basis and had to forego other financial opportunities to litigate it.  *Id.* ¶ 27.  Courts

9   have long recognized that the public interest is served by rewarding attorneys who assume

10  representation on a contingent basis with an enhanced fee to compensate them for the risk that

11  they might be paid nothing at all for their work.  *See In re Washington Public Power Supply*

12  *System Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1050; *In re*

13  *Omnivision*, 559 F. Supp. 2d at 1047.

14       As to the fifth factor, the request for attorneys' fees in the amount of 30% of the common

15  fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.  *See Glass v. UBS*

16  *Fin. Serv., Inc.,* 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of a wage

17  and hour class action for 25 to 35% of the claimed damages to be reasonable in light of the

18  uncertainties involved in the litigation); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482,

19  491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth

20  Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"); *In*

21  *re Pacific Enterprises Sec. Litig*., 47 F.3d at 379 (affirming fee award equal to 33% of fund);

22  *Garner*, 2010 WL 1687829 (awarding fee of 30% of the $15 million settlement fund); *In re*

23  *Activision Sec. Litig*., 723 F.Supp. 1373, 1375 (N.D. Cal. 1989) (32.8% fee); *Linney*, 1997 WL

24  450064, *7 (N.D. Cal. July 18, 1997) (33.3% fee); *Vizcaino*, 290 F.3d at 1047 (28% fee award).

25       The Court has also performed a lodestar cross check and finds that it supports the

26  requested contingency-fee percentage.  Utilizing the lodestar method, the Court notes that the base

27  hourly attorneys' fees accrued by Class Counsel in this case exceeds the 30% percentage rage by

28  $37,505.  Class Counsel has devoted 328 hours of time during the two year litigation of this case,

1    for which it seeks $125,700 in attorneys' fees.  During that time Class Counsel engaged in

2    extensive discovery, took depositions, and engaged in mediation.  The Court finds that Plaintiff's

3    fee request is reasonable and appropriate under the lodestar/multiplier method.  Pl.'s Fee Mot.,

4    Yeremian Decl. ¶ 34.

5           Finally, the lack of objection from the class after notice further demonstrates the

6    reasonableness and fairness of Class Counsels' fee request.  *In re Heritage Bond*, 2005 WL

7    1594389, at *15-16.

8           3.     Conclusion

9           For the foregoing reasons, the Court finds that the requested fee reflects a reasonable

10   percentage of the common fund established for the class and is also fully supported by the

11   lodestar/multiplier crosscheck.

12   **D.     Costs**

13          Class counsel is entitled to reimbursement of reasonable expenses.  Fed. R. Civ. P. 23(h);

14   *see also Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving

15   reasonable costs in class action settlement).  Plaintiff's declaration states that the total amount of

16   out-of-pocket expenses and costs incurred by Class Counsel in prosecuting this case exceeds the

17   amount requested.  Pursuant to the Agreement, Class Counsel has restricted its request for

18   reimbursement of costs to $9,000.  Pl.'s Fee Mot., Yeremian Decl., ¶ 40.  The Court finds that

19   these costs are reasonable.  Accordingly, class counsel's motion for costs in the amount of $9,000

20   is GRANTED

21   **E.     Incentive Award**

22          At its discretion, the Court may award incentive or service awards to named plaintiffs to

23   compensate them for work done on behalf of the class and in consideration of the risk undertaken

24   in bringing the action.  *Rodriguez*, 563 F.3d at 958-59.  Courts often assess the reasonableness of

25   the award by taking into consideration: "(1) the risk to the class representative in commencing

26   suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the

27   class representative; (3) the amount of time and effort spent by the class representative; (4) the

28   duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class

United States District Court
Northern District of California

14

representative as a result of the litigation." *Keirsey v. eBay, Inc.*, 2014 WL 644738, at *2 (N.D. Cal. Feb. 18, 2014) (citing *Walsh v. Kindred Healthcare*, 2013 WL 6623224, at *4 (N.D. Cal. Dec. 16, 2013) (citations omitted). In this District, a $5,000 incentive award is presumptively reasonable. *See Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120, at *6 (N.D. Cal. Sep. 26, 2013) (citations omitted).

By initiating and prosecuting this action, Plaintiff undertook the financial risks associated with a potentially unfavorable outcome, including the responsibility for attorney's fees. Yeremian Decl., ¶ 43. Plaintiff also undertook the risk that his involvement in this lawsuit could jeopardize his current and future employment prospects. *Id.* ¶ 45. Plaintiff spent a considerable amount of time and effort assisting Class Counsel during the two-year span of this action, including providing documents and information, identifying witnesses, attending his deposition, helping counsel analyze documents. Plaintiff also participated in the full-day mediation that resulted in the Stipulation of Settlement. *Id.* The proposed incentive payment is modest compared to the estimated aggregate value of the settlement compensation being provided to the putative class as a whole. Last, the estimated average claim value is $2,672.56. Osterlund Decl., ¶ 8. The proposed $5,000 incentive award is proportional to the range of settlement awards. *See Staton*, 327 F.3d at 976.

Given the work Plaintiff performed as the class representative on behalf of the class members, the risk Plaintiff undertook in bringing this action, and the class members' response to the settlement, the Court finds that the requested incentive payment of $5,000 is reasonable and appropriate.

## CONCLUSION

For the reasons outlined above, the Court GRANTS final approval of the Settlement, GRANTS Plaintiff's Fees Motion, and ORDERS as follows:

1. The Court hereby APPROVES the Settlement Agreement.

2. The Court AWARDS Plaintiff's Counsel attorneys' fees in the amount of $127,000.

3. The Court AWARDS Plaintiff's Counsel reimbursement of expenses in the amount

of $9,000.

4.   The Court AWARDS an incentive payment of $5,000 to Class Representative, Albert Ching.

5.   The parties and the Settlement Administrator shall perform their respective obligations under the terms of the Settlement Agreement.

6.   Pursuant to the terms of the Settlement Agreement, the instant action is dismissed with prejudice.

7.   Judgment is entered in accordance with the findings in this Order.  This Judgment is the Final Judgment in the suit as to all Settlement Class Members who have not excluded himself/herself from the settlement.  The Court finds that there is no just reason for delay and expressly directs the Clerk of Court to enter Judgment immediately.

8.   The Clerk shall close the file and terminate all pending matters.

**IT IS SO ORDERED.**

Dated: June 27, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge